found for the plaintiff the precise question in whether there was evidence to warrant the finding, which he specifically made, that the defendant, within six years of March, 1940, had made a payment of interest or principal within the meaning of those words as used in sec. 14.

The plaintiff testified that, by agreement, she came in 1937, to live at the defendant's house at a charge of $7. per week to be credited toward the interest on the notes and that that arrangement lasted until July, 1939, when they separated because of dissention between them. The defendant testified that the plaintiff came to live with her in 1937 at $7. per week for room and board, but denied the existence of any agreement that this sum should be credited on the notes. The trial judge, obviously believing the plaintiff, made a specific finding of fact that the "plaintiff and defendant made an oral agreement by the terms of which defendant agreed to furnish the plaintiff with room and board at the rate of seven dollars per week (and did so for eighty-four or eighty-five weeks) and the plaintiff agreed to apply (and did apply) that sum from week to week as payments on account of said notes; that in this manner the defendant paid and received credit in the sum of five hundred eighty-seven dollars on account of said notes."

The defendant's real grievance is that the trial judge found the plaintiff's evidence more credible than that of the defendant, —a matter with which we have no concern.

None of the defendant's requested rulings which were denied could have been granted. *Taylor* v. *Foster*, 132 Mass. 30; *Nutter* v. *Mroezka*, 303 Mass. 343.

Report dismissed.

No. 150429 Municipal Suffolk, ss.
CALABRO (Edward E. Cohen)
v. COTTAGE GARDENS, INC. (Joseph Graglia)
From the Municipal Court of Boston—Keniston, J.
Argued October 27, 1941—Opinion Filed December 13, 1941

PUTNAM, C.J. (Riley, & Tomasello, JJ.)—This action is to recover the purchase price of a beer-cooling unit. The contract contained an express warranty in the following words: "We guarantee 190-12 (meaning 12 ounce) glasses out of a Good full B. (meaning barrel) of Beer or Ale." The answer consists only of a general denial and an allegation that there was a breach of the above warranty.

Without objection the plaintiff called as a witness a cafe proprietor who testified that he had one of the plaintiff's beer-cooling units in his cafe and that in the course of several tests of it (during the eight months in which he had had it) it

[ 21 ]

delivered 190 twelve-ounce glasses of beer from a barrel, and once delivered 199 such glasses. The issue of the inherent ability of the plaintiff's unit having been thus opened, the defendant's president testified that after the contract was executed he, and the plaintiff, and one Friedman (who was apparently the president of a corporation which either sold or manufactured these cooling units) went to the seller's place of business, where there was a demonstrating unit. The report recites that "There was evidence that the demonstrating unit in so far as its ability to deliver beer was the same as that ordered by the defendant." The witness further testified that he and the plaintiff and Friedman were able to get no more than 174 glasses to the barrel out of it; that the plaintiff and Friedman said there was something wrong with the system and to try again; that a few days later they did try again, and again got only 174 glasses; and that he then said he would not take the unit he had contracted for and refused to allow it to be installed in his place of business.

It would seem that if the plaintiff had not opened up the general issue of the inherent ability of his machine to produce 190 glasses of beer from a full barrel it would not have been open to the defendant to introduce evidence as to the failure of the demonstrating unit to produce that number. *Vale* v. *Butler,* 111 Mass. 55. Such evidence is only admissible where the defendant's answer raises an issue of fraud. *Water's Patent Heater Co.* v. *Smith,* 120 Mass. 444, and in the case at bar the answer raised no such issue. But in the case at bar the plaintiff chose to open up and try the general issue of the inherent ability of his invention to produce 190 glasses of beer. He did not try to limit the trial to the specific unit ordered by, and tendered to, the defendant. He chose his own issue, which was one not raised by the pleadings. The defendant made no objection and that issue was tried. The defendant succeeded in satisfying the judge that the plaintiff's cooling unit was inherently incapable of delivering 190 glasses from a full barrel. If the parties chose, without objection, to try that issue, the plaintiff cannot now complain. The judge found as a fact that the demonstrating unit was the same as that ordered by the defendant, and that it failed to comply with the guarantee. These findings, and his general finding for the defendant, are, in our opinion, the equivalent of a finding "that this failure in the operation of the mechanism was not caused by any defect or negligence in the setting or operating, and was not merely accidental or of occasional recurrence, but that it was the necessary and inevitable result of the construction of the mechanism itself." *Water's Patent Heater Co.* v. *Smith, supra.* He was not bound to believe the plaintiff's testimony about carbon dioxide gas in beer, nor the testimony of Marone that his unit produced 190 glasses and that one man can get more glasses from one barrel than another man.

The case, as it was tried, falls fairly within the principle of *Water's Patent Heater Co.* v. *Smith, supra.*

Report dismissed.

No. 22893 Municipal Suffolk, ss.

CALIRI (Prague & King, Henry Lawler)

v. PALMER, ET AL, TRS.

(John J. Whittlesey, H. W. Blackman)

From the Municipal Court of Boston—Brackett, J.

Argued September 29, 1941—Opinion Filed December 13, 1941

PUTNAM, C.J. (Carr, & Gillen, JJ.)—This action of tort for personal injuries arises out of an accident which happened on February 24, 1936, on a sidewalk of a public way which ran under an open work bridge of the railroad of which the defendants are the trustees, and the declaration recites that it was "due to the negligence and carelessness of the defendant, its agents, servants or employees, in allowing an artificial accumulation of ice and/or snow to accumulate on said sidewalk, the same coming from the property of the defendant"—.

The defendants seasonably presented certain requests for rulings which raised the question of the necessity, as a condition precedent to his recovery, of the plaintiff's proving that he had given a notice under G. L. (Ter. Ed.) c. 84, sec. 21. These requests were denied. The report contains no evidence, and the declaration does not allege, that any notice was given. The trial judge found for the plaintiff. The only question argued before this division was as to the necessity of a notice.

There seems to be no occasion to review here at any length the scope and consequences of St. 1908, c. 305, which is now G. L. (Ter. Ed.) c. 84, sec. 21. It first came before the Supreme Judiical Court in *Baird* v. *Baptist Society,* 208 Mass. 29, decided in 1911. That court there said, "It is to be observed that this statute (St. 1908, c. 305) is not an amendment to R. L. c. 51, sec. 20 (now G. L. (Ter. Ed.) c. 84, sec. 18). It has no relation whatever to the statutory liability imposed by that chapter. So far as respects public streets it refers only to the common law liability for the creation of a nuisance therein, and gives to those liable at common law for defect in a public way the same right to notice as that to which theretofore those upon whom rested the statutory liability were entitled."

Doubtless the defendants' overhead bridge, carrying the tracks and right of way over Dudley Street, was constructed by official permission, and at official direction, in the course of a grade crossing abolition proceeding under G. L. (Ter. Ed.) c. 159, sec. 65 *et seq* or some predecessor statute, and consequently might be held not to be a nuisance *per se.* See *Marshall*